IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMERICAN MUNICIPAL
POWER, INC.

      **Plaintiff,**

      vs.

VOITH HYDRO, INC.,

      **Defendant.**

Case No. 2:17-cv-708

Judge Algenon L. Marbley

Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for the resolution of a dispute arising from Defendant Voith Hydro, Inc.'s ("Voith") service of a subpoena upon non-party Stantec Consulting Services, Inc. (formerly MWH Americas Inc.) ("Stantec"). The current issues are reflected in Voith's motion to compel (ECF No. 135) and a motion to quash and for a protective order (ECF No. 159) filed by Plaintiff American Municipal Power ("AMP"). The Court has held multiple conferences to attempt to resolve the issues raised by these motions. The parties also have addressed these issues through extensive and expanded rounds of briefing. For the following reasons, the motion to compel is **GRANTED,** to the extent set forth below**,** and the motion to quash and for a protective order is **DENIED**. Voith's motion for leave to file a sur-reply (ECF No. 171) is **DENIED** as moot.

I.

The Court previously has addressed, at great length, the background of this complex, multi-million dollar case arising out of the construction of four, new hydroelectric power plants

on the Ohio River. *See* ECF No. 84, at pp. 2-15; 2019 WL 6251339, *1-8 (S.D. Ohio Nov. 22, 2019). Accordingly, it will not include any such discussion here. Nor does the Court see any need to recount the lengthy odyssey of this most current discovery dispute, other than to note the following. Stantec, although not a party to this action, was the project engineer retained by AMP pursuant to contract. Voith served the initial subpoena underlying the current dispute on Stantec on June 27, 2018. Negotiations over Stantec's response continued between Voith and Stantec's in-house counsel until that counsel's departure in October 2019. Upon Stantec's retention of outside counsel, negotiations resumed in November 2019. In January 2020, Voith served a new subpoena on Stantec. This second subpoena is the focus of the current dispute.

Fast forward to today. After months of conferences with the Court, Court-ordered meet and confers, and additional briefing, two aspects of the January 2020 subpoena remain at issue: Voith's request for (1) emails from 36 custodians dated between January 1, 2006 and February 3, 2020, as hit by the 96 search terms identified by Voith as of December 16, 2020 (ECF No. 168, Exhibit 4) and (2) the print-out of Stantec's file directory structure.[1] The Court addresses the parties' motions as follows.

## II.

Federal Rule of Civil Procedure 45(d)(1) provides that "[a] party or attorney responsible for issuing a subpoena must take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena[,]" *State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.,* 364 F. Supp. 3d 758, 765 (E.D. Mich. 2018). "'If an objection is interposed based on an alleged undue burden, the objecting party must make a specific showing, usually ... by affidavit,

---

[1] Stantec represents that this request no longer is at issue. (ECF No.163 at 6.) Voith disagrees. (ECF No. 168 at 2 n. 2.)

2

of why the demand is unreasonably burdensome.'" *Id.* at 766 (quoting *Jones-McNamara v. Holzer Health Sys.*, No. 2:13-cv-616, 2014 WL 3563406, at *1 (S.D. Ohio July 18, 2014) (citing *McFadden v. Ballard, Spahr, Andrews & Ingersoll, LLP*, 243 F.R.D. 1, 11 (D.D.C. 2007)); *see also State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 WL 10936871, at *14 (E.D. Mich. Nov. 26, 2013) ("[W]here [the respondent] has not supported his claim of burden by affidavit or otherwise, his bare assertion is insufficient to permit refusal to comply with the subpoena in its entirety.").

Generally, absent a protective order, the party producing discovery bears the costs of production. *Cahoo v. SAS Inst. Inc.,* 377 F. Supp. 3d 769, 776–77 (E.D. Mich. 2019) (citing *Medtronic Sofamor Danek, Inc. v. Michelson,* 229 F.R.D. 550, 553 (W.D. Tenn. 2003)); *see also Oppenheimer Fund v. Sanders,* 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)). However, Fed. R. Civ. P. 45(d)(2)(B)(ii) "'has been deemed to make cost shifting mandatory in all instances in which a non-party incurs significant expense from compliance with a subpoena.'" *Id.* (quoting *Linglong Americas Inc. v. Horizon Tire, Inc.*, No. 15-1240, 2018 WL 1631341, at *2 (N.D. Ohio Apr. 4, 2018); *see also Hennigan v. Gen. Elec. Co.,* No. 09-11912, 2012 WL 13005370, at *2 (E.D. Mich. Apr. 2, 2012) ("It is well-established that cost-shifting, in the context of a subpoena, should occur when an order requiring compliance subjects a non-party to 'significant expense.'").

This cost shifting is required to "'protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder non-significant.'" *Linglong,* 2018 WL 1631341, at *2 (quoting *Under v. Calero–Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001)). However, "[p]rotection of a non-party from significant expense does not necessarily mean that the party issuing the subpoena must bear the entire cost of compliance."

3

*Selective Ins. Co. of Se. v. RLI Ins. Co.,* No. 5:12CV2126, 2016 WL 6915890, at *2 (N.D. Ohio Sept. 16, 2016), *report and recommendation adopted*, No. 5:12CV2126, 2017 WL 1206036 (N.D. Ohio Mar. 31, 2017) (citing *In re Exxon Valdez,* 142 F.R.D. 380, 383 (D.D.C. 1992)). Rather, determining what costs are significant is within the sound discretion of the trial court. *Linglong.*, at *2 (citing *Sound Sec., Inc. v. Sonitrol Corp.*, No. 3:08–cv–05359–RBL, 2009 WL 1835653, at *1 (W.D. Wash. June 6, 2009)). "Expenses incurred complying with a subpoena must also be reasonable, and the determination of reasonableness is also within the trial court's discretion." *Id*. (citing *In re Aggrenox Antitrust Litigation*, No. 3:14–md–02516 (SRU), 2017 WL 4679228, at *2 (D. Conn. Oct 18, 2017)). The relevant factors for determining how much of the production cost the requesting party must bear include "whether the nonparty has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party, and whether the litigation is of public importance." *Selective Ins.*, at *2 (quoting *Linder v. Calero–Portcarrero,* 180 F.R.D. 168, 177 (D.D.C. 1998)).

Finally, the court is required to enforce the duty of Rule 45(d)(1) and impose "an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *In re: Mod. Plastics Corp.,* 890 F.3d 244, 251 (6th Cir. 2018).

### III.

#### A. Voith's Motion to Compel

Turning first to Voith's motion to compel, as things currently stand, Stantec requests that the subpoena be modified to avoid undue burden and significant expense. As noted, Stantec's argument is limited to challenging Voith's request for the emails from 36 custodians dated from

4

January 1, 2006 through February 2, 2020, as generated from the application of 96 search terms. The Court will begin its analysis with this issue.

   1. **Emails**

Stantec requests that Voith be required to narrow the scope of the documents it seeks in two ways.  First, Stantec requests that Voith be required to couple proposed search terms.  According to Stantec, such an approach would be consistent with both the Court's previous rejection of Voith's proposed "single-word Project name search terms" (ECF No. 163 at 7 citing ECF No. 46) and with that followed by AMP and Voith in their mutual ESI productions.  (*Id*. at 8-9.)  Second, Stantec contends that the cut-off date should be August 14, 2017, the date of AMP's Complaint (ECF No. 1), at the latest.  Stantec explains that such a cut-off date will minimize the potential for the production of irrelevant emails or privileged communications and limit the cost of privilege review.  Further, Stantec asserts that many of the documents requested already have been produced by AMP or are otherwise discoverable from AMP.  Stantec also contends that the start date should be modified to a date in April 2007, representing the start date of Stantec's contract with AMP.  (*Id*. at 7, 14.)[2]

Stantec further requests that the Court order Voith to pay Stantec's reasonable vendor and attorneys' fees incurred in hosting/processing the data, performing the searches, and reviewing the documents yielded by the search terms for relevance and privilege.  Stantec explains that it took the steps to gather the email accounts of all agreed-upon custodians with a last name beginning with "A" or "B" and the total size of data is approximately 1 TB.  Extrapolating from that sample, Stantec asserts that it will cost $30,000 to process 6TB of data and store it for the first month, and then $18,000 a month for each additional month of storage. (ECF No. 163 at 8.)

---

[2] Stantec cites both April 24 and April 26 as the appropriate start date for the subpoena,

Beyond challenging Voith's motion to compel, Stantec has not independently moved to quash the subpoena in any respect.

For its part, Voith contends that, despite ample opportunity to demonstrate to the Court in concrete terms the undue burden that it will suffer, Stantec has opted to rely only on argument and generalizations.  More specifically, Voith disputes Stantec's characterization of the search terms as "single-word" terms and asserts that they are the very types of terms which would be considered "pairing terms" to be used with generic terms to try to hit only the AMP projects. As Voith explains:

> They are project names. They are multidigit project numbers unique to the AMP projects. They are the email domains for AMP or its professionals or contractors who worked on the AMP projects. They are the unique and uncommon names or user-names of people at AMP or those organizations. The only terms which are "generic" are found in items 88 to 96 in the search term list. And those are paired or pretty unique.

(ECF No. 168 at 8 n. 6.)  According to Voith, Stantec's assertions about the search terms are completely untested and Stantec has offered no alternative formulation of terms.  Voith dismisses Stantec's relevance concerns, citing the terms of the Protective Order (ECF No. 34, 106.) Further, Voith asserts that Stantec has not provided estimates as to how long a privilege review either would take or would cost.

With respect to the date range, Voith argues that, for several reasons, the Court should not modify the start date of January 1, 2006.  First, it contends that Stantec initially had agreed to that date.   Further, Voith explains that it is the start date which AMP and Voith used for their ESI productions.  Finally, Voith states that in 2006 Stantec was performing site evaluations and feasibility studies for AMP pursuant to a Master Consulting Services Agreement, and that that work is probative of matters in this case.  Voith also contends that January 3, 2020, should remain the cut-off date.  According to Voith, Stantec has not demonstrated that the production of documents through that date results in undue burden.  Further, Voith asserts that Stantec's

disputes with AMP which relate to AMP's disputes with Voith continued past August 14, 2017, and Stantec was involved in providing project engineering services on matters at issue in the case at least as late as January 2020.

On the issue of significant expense, Voith argues that Stantec has provided only an unreliable cost estimate. According to Voith, it tried to confer with Stantec about cost but Stantec "refused to engage." (ECF No. 168 at 6.) Voith notes that Stantec undertook a "6 custodian collection effort" but asserts that Stantec did not attempt to discuss it or anything else about cost with Voith. (*Id.*) In short, Voith contends that Stantec has failed to take steps to obtain meaningful data upon which to start making further estimates of potential expense.

As noted, Stantec rests its objection on two grounds – the scope of Voith's subpoena and the significant expense of both objecting to and complying with it. Given the state of the record, the issue of scope is easily resolved and the motion to compel is **GRANTED,** to the following extent. The Court will not modify the dates of the subpoena. Stantec originally agreed to a start date of January 1, 2006, the date is consistent with AMP and Voith's production, and Stantec has not set forth any specific reason, by affidavit or otherwise, to depart from this date. Accordingly, the start date remains January 1, 2006. With respect to a cut-off date, Stantec's argument as to why it should be no later than August 14, 2017, is, at its core, an argument regarding cost and, more specifically, the cost of a privilege or relevance review. In the Court's view, while obviously related, these issues are distinct. Stantec does not challenge Voith's representations that disputes regarding matters related to this case continued well past August 14, 2017. Stantec has not proposed any other date between August 2017 and January 2020. Accordingly, the cut-off date remains January 3, 2020.

Similarly, the Court will not require Voith to further refine its search terms.  The Court is satisfied from both its review and Voith's explanation that they are intended as pairing terms to be used with generic terms to try to hit only the AMP projects.  Again, Stantec has offered no specifics to support its claims of burden and has not proposed any alternative terms.  Accordingly, the search terms remain as reflected in the exhibit attached to Voith's sur-reply response.  (ECF No. 168, Exhibit 4.)

This brings the Court to the issue of the alleged expense Stantec has incurred and will incur in complying with Voith's subpoena.  It is evident that this is Stantec's primary concern.  Despite the nature of its concern regarding this issue, in the end, Stantec affords it only broad-brush treatment.  Stantec's approach does little to allow the Court to address the issue of expense with any precision.  The court's discussion in *State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.,* 364 F. Supp. 3d 758, 767 (E.D. Mich. 2018), is particularly instructive as to how Stantec falls short in its effort.  As that court explained:

> The Court recognizes that responding to discovery is generally *bothersome*, and may indeed be, at least to some extent, burdensome. It also recognizes that only the rare recipient of a discovery request would relish the task of responding, particularly if it also entailed a privilege review. But the fact that it will be either bothersome or burdensome to respond to a discovery request does not necessarily mean that it will be *unduly* so. In light of their responsibility to ensure that parties "obtain discovery regarding any nonprivileged matter that is relevant to the party's claim," while also ensuring that the rules are employed so as to "secure the just, speedy, and inexpensive determination of every action," it is reasonable for the courts to require more detail and support than just an attorney's proclamation of "undue burden" in order to preclude or circumscribe discovery on this basis. Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 1. As a recent article explained, "it is clear that 'undue burden' for purposes of nonparty discovery does not mean no burden at all[,]" and recipients of subpoenas should "[b]e prepared to support allegations of undue burden with detailed cost and time calculations, supported by knowledgeable declarations." Matt Hamilton, Donna Fisher & Sandra Adams, *Does Rule 45 Protect Nonparties from Undue Burden,* Law360 (Oct. 2, 2018), http://www.law360.com/appellate/articles/1088653.

*Id.*

To be clear, Stantec has submitted two affidavits from its counsel purporting to demonstrate that the estimated expense involved here constitutes an undue burden. (Affidavits of Katherine C. Ferguson, Esq., ECF Nos. 140-1, 163-5.) For example, according to Ms. Ferguson's initial affidavit, an outside vendor estimated that it would cost $40,000 to run 109 search terms through the email accounts of 43 custodians. She confirms that this estimate did not include the cost associated with hiring outside legal counsel to review the emails to ensure that only documents relevant to this litigation are produced. (ECF No. 140-1 at ¶¶ 5, 6.) In her second affidavit, Ms. Ferguson explains that, taking into account agreed revisions, Stantec's vendor estimates it will cost $30,000 to process 6TB of data and store it for the first month, and then an additional $18,000 a month for each month of storage. (ECF No. 163-5 at ¶¶ 3, 6.) These bare minimum averments, however, cannot fairly be described as "detailed cost and time calculations." *Id.*

Stantec's limited effort at demonstrating either undue burden or significant expense here weighs in favor of granting Voith's motion to compel in full. However, as Voith itself clearly recognizes, given the potential for a voluminous ESI production, expense is a consideration. (ECF No. 168 at 6.) ("Voith tried to confer about cost following the last conference with the Court, but Stantec refused to engage."). This is consistent with its obligation under Rule 45(d)(1) to take reasonable steps to avoid imposing significant expense resulting from compliance. Accordingly, in the interest of efficiency, the Court finds the following to be a better exercise of its discretion.

Now that the Court has clarified the scope of the subpoena based on the current state of the record, it is time for the issue of the expense of Stantec's compliance to be addressed seriously and resolved expeditiously. To this end, Voith and Stantec are **ORDERED t**o meet

9

and confer in good faith on the issue of cost within 30 days of the date of this order. They are further **ORDERED** to include their respective vendors in the meet and confer. To make the discussion meaningful, prior to meeting and conferring, Stantec is **ORDERED** to collect emails from the mailboxes of the 36 identified custodians and to be prepared to provide the raw number and volume of items. For ease of discussion, if possible, the collection should be divided by date as follows: one collection for January 1, 2006 through August 14, 2017 and one collection for August 15, 2017 through January 3, 2020. The Court expects the discussions to be comprehensive and cover all potential costs of production, including the cost of privilege or relevance review.[3] In an effort at minimizing costs, issues such as whether certain documents already have been produced by AMP or are otherwise discoverable from AMP also should be addressed. To be clear, given the age of this case, the length of this particular dispute, and the number of times the Court has been called upon to resolve discovery disputes over the course of this litigation, the Court will not tolerate any further half measures or gamesmanship in addressing these issues. If, despite the Court's guidance here and the parties' best efforts, the issue of significant expense remains unresolved, Voith and/or Stantec may seek additional assistance from the Court. However, Stantec is **SPECIFICALLY ADVISED** that, should it return to the Court claiming undue burden or expense, its claim must be supported with "detailed cost and time calculations supported by knowledgeable declarations." *Elite Health Centers*, 364 F. Supp. 3d at 767. Stantec is **FURTHER ADVISED** that its failure to do so will result in

---

[3]The Court notes that Voith dismisses Stantec's concerns over the production of irrelevant information, arguing that the Protective Order addresses this concern. This seems to be a departure from the view leading Voith to redact irrelevant information from 22,152 non-privileged records, resulting in the Court's granting AMP's motion to compel. (ECF Nos. 119, 133.)

Voith's motion to compel being granted in full without any consideration of the need for cost-shifting measures.

### 2. File Directory Structure

As the Court understands this request, in connection with Voith's initial subpoena, Stantec's in-house counsel and Voith had agreed to collaborate in finding responsive records within all of Stantec's files. In an effort at efficiency and cost-saving, Stantec offered to provide the file directory listing and to work with Voith to limit production from only those directories in which the subpoenaed information might reasonably be found. As Voith explains it, "Stantec does not have to create directories—they are already there and viewable in its computer systems. A Stantec employee can print screen shots from Windows Explorer of the directories in which Stantec maintains the AMP project records." (ECF No. 145 at 11.) Based on this explanation, Voith is neither requiring that Stantec create a document that does not exist nor is it engaging in a fishing expedition. Rather, Voith seeks only a "picture" of the directory listing as it exists in Stantec's computer system. Further, as Voith explains, it will not know what is contained within the directories, and if Voith fails to identify a directory which contains responsive material, Stantec will not produce it. To the extent that this is all Voith's request is intended to encompass, the motion to compel is **GRANTED.**

### B. AMP's Motion to Quash

AMP also challenges the subpoena through its motion to quash and for a protective order. AMP contends that the subpoena must be denied on grounds of undue burden – as to both it and Stantec – and privilege. Voith challenges AMP's motion on grounds of timeliness and otherwise. Because, as set forth below, the Court finds AMP's motion to be without merit at this time, it will not address the issue of timeliness.

11

Typically, a party does not have standing to challenge a subpoena issued to a non-party. Where a party successfully asserts "'some personal right or privilege with regard to the documents sought,'" however, that party will have standing. *Mann v. University of Cincinnati*, Nos. 95-3195 and 953292, 1997 WL 280188, at *4 (6th Cir. May 27, 1997) (quoting 9A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2459 (1995)); *see also Hackmann v. Auto Owners Ins. Co.*, No. 2:05-cv-876, 2009 WL 330314, at *1 (S.D. Ohio Feb. 6 2009) (noting that a party would have standing to move to quash a subpoena served upon a nonparty if that party had "a claim of some sort of personal right or privilege"). "Personal rights or privileges supporting a claim to standing 'have been recognized with respect to personal bank records, information in a personnel file, corporate bank records, or Indian tribal records.'" *Riding Films, Inc. v. John Does 129-193*, No. 2:13-CV-46, 2013 WL 3322221, at *4 (S.D. Ohio July 1, 2013) (quoting *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis,* No. 1:11-CV-0851, 2013 WL 146362, at *5 (S.D. Ohio Jan. 14, 2013)). The issue of standing "is a threshold issue which the Court must consider before addressing the merits" of any challenges to the subject subpoenas. *Waite, Schneider, Bayless & Chesley Co. L.P.A.*, 2013 WL 146362, at *5.

Courts in this circuit previously have concluded that "only the entity responding to the subpoena has standing to challenge the subpoena on the basis of undue burden.'" *Meyer v. Bank of Am., N.A.,* No. 2:18-CV-218, 2018 WL 6436268, at *5 (S.D. Ohio Dec. 7, 2018); *Id*. (quoting *Riding Films,* 2013 WL 3322221, at *6 (collecting cases). Stantec, not AMP, is the recipient of the subpoena, and therefore, it appears that AMP does not have standing to raise an undue burden challenge to the subpoena. *Meyer,* 2018 WL 6436268, at *5. Moreover, even if the Court were so inclined to consider such an argument here, the Court already has addressed the

12

issue of Stantec's undue burden above and the sees no reason to depart from its reasoning. Further, AMP has failed to sufficiently support its own claim of undue burden.

Turning to the issue of privilege, as the Court understands AMP's privilege argument, it is, at its core, a variation on the undue burden theme. (*See, e.g.,* ECF No. 159 at 14 describing Voith's intent as to "force AMP to engage in a costly, and unduly burdensome privilege review.")  As noted above, undue burden is Stantec's concern here.  Moreover, even if the Court were to consider this argument, Voith and AMP seem to agree, based on the Court's previous ruling (ECF No. 133), that the issue of privilege has been resolved as to documents dated prior to June 22, 2017.  Accordingly, the potential universe of documents subject to a privilege review is limited, at most, to those dated between June 22, 2017 and January 3, 2020.  Again, as explained above in connection with Voith's motion to compel, the issue of undue burden with respect to a privilege review of these documents cannot meaningfully be addressed prior to the ordered meet and confer.

Further, taking AMP's privilege argument at face value, AMP is requesting that the Court make a pre-emptive finding that all documents exchanged between it and Stantec and dated June 22, 2017, or after, are privileged.[4]  AMP relies on the common interest and joint defense doctrines in support of its position.  AMP also contends that Stantec has taken on a litigation support, litigation consultant, and expert witness role starting since litigation became apparent such that Voith's request will capture an "overwhelming volume of privileged correspondence." (ECF No. 169 at 9.)  AMP's motion is premature.

---

[4]Voith argues that the earliest date a common interest could have arisen is April 13, 2018.

"Some district courts in this Circuit have held that a 'blanket assertion of ... privilege is insufficient' to justify granting a motion to quash." *Meyer*, 2018 WL 6436268, at *3 (citing *Brown v. Tax Ease Lien Servicing, LLC*, No. 3:15-CV-208-CRS, 2017 WL 6940735, at *4 (W.D. Ky. Aug. 21, 2017) (considering law firm's motion to quash and holding that an "examination of the motion to quash immediately reveals that the law firm has made a blanket assertion of the attorney-client privilege without providing any privilege log as required by Rule 26(b)(5). Such a blanket assertion of the privilege is insufficient."). While the Court does not believe AMP was required to prepare a privilege log to substantiate its motion to quash, as the moving party, its failure to appropriately support its privilege argument weighs against granting its motion here. *Id.*; s*ee also Hendricks*, 275 F.R.D. at 253 ("The party seeking to quash a subpoena bears the ultimate burden of proof." (citing *White Mule Co.*, 2008 WL 2680273, at *4)).

In sum, based on the current record, the Court simply lacks sufficient information upon which to make a privilege determination. However, the Court recognizes that clarification of the potential need for a privilege review, or what any contemplated review would entail, may arise from the meet and confer-process ordered above. Based upon the outcome of the meet and confer, should AMP believe that such protection remains necessary, it may renew its motion. AMP is of course **ADVISED** that any renewed motion making only a blanket assertion of privilege will be denied. Accordingly, AMP's motion is **DENIED without prejudice** to re-filing at a later date as appropriate**.**

## IV.

For the reasons stated above, Voith's motion to compel (ECF No. 135) is **GRANTED** to the extent set forth herein. Voith and Stantec are **ORDERED t**o meet and confer on the issue of cost within 30 days of the date of this order. They are further **ORDERED** to include their

respective vendors in the meet and confer. To make the discussion meaningful, prior to meeting and conferring, Stantec is **ORDERED** to collect emails from the 36 identified custodians for the dates between January 1, 2006 and August 14, 2017 and between August 15, 2017 and January 3, 2020 and to be prepared to provide the raw number and volume of items. The Court expects the discussions to be comprehensive and cover all potential costs of production, including the cost of privilege or relevance review. AMP's motion to quash and for a protective order (ECF No. 159) is **DENIED without prejudice to re-filing at a later date as appropriate.** Voith's motion for leave to file a sur-reply (ECF No. 171) is **DENIED** as moot.

    **IT IS SO ORDERED.**


                                                        */s/ Elizabeth A. Preston Deavers*
**DATED: March 22, 2021**                  **ELIZABETH A. PRESTON DEAVERS**
                                                   **UNITED STATES MAGISTRATE JUDGE**