**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**AMERICAN MUNICIPAL**
**POWER, INC.**

   **Plaintiff,**

            **Case No. 2:17-cv-708**

  **vs.**         **Chief Judge Algenon L. Marbley**

            **Magistrate Judge Elizabeth P. Deavers**

**VOITH HYDRO, INC.,**

   **Defendant.**

**OPINION AND ORDER**

   This matter is before the Court for the resolution of the most recent iteration in the series of discovery disputes that have come to define this four-year old case. The current issues are reflected in Voith's motion to compel ESI production (ECF No. 190), AMP's 31-page response (accompanied by 24 exhibits totaling over 1400 pages) (ECF No. 193), and Voith's reply (ECF No. 198). For the following reasons, the motion to compel is **GRANTED, in part and DENIED without prejudice, in part.**

**I.**

   The Court previously has addressed, at great length, the background of this complex, multi-million dollar case arising out of the construction of four, new hydroelectric power plants on the Ohio River. *See* ECF No. 84, at pp. 2-15; 2019 WL 6251339, *1-8 (S.D. Ohio Nov. 22, 2019). Accordingly, it will not include any such discussion here. Rather, the Court resolves the most recent motion to compel as follows.

## II.

Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the motion to compel includes "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Consistent with this, Local Rule 37.1 requires the parts to "exhaust[] among themselves all extrajudicial means for resolving their differences" before filing an objection, motion, application, or request relating to discovery. S.D. Ohio Civ. R. 37.1.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc*., 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc*., 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted).

Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard.  *Id.* (citation omitted).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'"  *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)).  This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery'" because "'[r]estoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions."  *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)).   In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming."  *Id.* (citing *Surles*, 474 F.3d at 305) (emphasis in original).

### III.

According to Voith, there are three categories of improperly withheld ESI – (a) attachments[1]; (2) emails withheld from AMP's Discharge Ring Production[2]; and (3) non-email items.  More specifically, Voith asserts that there are 12,997 attachments for which "AMP has failed to demonstrate privilege" because AMP's "Privilege Description" does not sufficiently describe the

---

[1] As the Court understands Voith's argument here, the attachments at issue are email attachments.  *See, e.g.,* ECF 198 at 6.

[2] The discharge ring records were the subject of a supplemental production directed to post-Complaint records.  (ECF No. 190 at 2.)

attachments or provide information demonstrating privilege. (ECF No. 190 at 2; ECF No. 190-1.) Further, Voith argues that AMP has not provided the author's name for 4,711 of those items. (*Id*.; ECF No. 190-2.) With respect to the discharge ring records, Voith seeks to compel (1) 43 emails sent to third parties (ECF No. 190-3); (2) 38 emails which do not include counsel but were withheld as attorney-client privileged (ECF No. 190-4); and (3) 114 emails exchanged with project engineer Stantec Consulting Services, Inc. (ECF No. 190-5.) Finally, Voith seeks 2,316 non-email items for which it contends AMP's logs are deficient because AMP either failed to provide the author or sufficiently describe privilege. (ECF No. 190-6.) The Court will address the parties' arguments by category.

### A. Attachments

As noted, Voith asserts that there are 12,997 attachments for which "AMP has failed to demonstrate privilege" because AMP's "Privilege Description" does not sufficiently describe the attachments or provide information demonstrating privilege. (ECF No. 190-1.) Further, Voith argues that AMP has not provided the author's name for 4,711 of those items. (ECF No. 190-2.) For its part, AMP contends that Voith has not made any effort to identify whether any of these documents are relevant to the claims and defenses in this case. By way of example, AMP asserts that Voith is attempting to "force the production" of items on AMP's privilege log simply because they lack author metadata. Further, AMP argues, relying on a declaration from its counsel, Michael K. Robertson (ECF No. 193-1, Declaration of Michael K. Robertson ("Robertson Decl.")), that its review process worked such that original, non-privileged versions of its attachments are found in its production. AMP also rejects Voith's remaining asserted justifications for demanding production, affirming specifically that it stands by its privilege descriptions. In reply, Voith maintains that it devoted significant effort to remove irrelevant attachments and focus

its challenges, objects to AMP's view that non-privileged attachments may be privileged "in context," and reiterates its complaint that AMP's privilege descriptions are deficient.

The starting point for the Court's discussion on this issue is the Stipulation and Order Regarding Protocol for the Search and Production of Electronically Stored Information and Hard Copy Documents dated April 23, 2018. (ECF No. 38.) That document provides, in relevant part:

> If any original ESI has attachments, the parties will produce copies of that ESI with the attachments unless the ESI is privileged. If the ESI is privileged, any attachments to the ESI will be produced unless also privileged.

(ECF No. 38 at § III, ⁋ I.)

> Producing parties shall only withhold ESI or Documents as permitted herein, on the basis of privileged within the bounds of applicable law, or upon order of the Court. Pursuant to Section III(N), the parties shall prepare the privilege logs in accordance with Fed.R.Civ.P. 26(b)(5).

(*Id*. at § VI, ⁋ A.)

Needless to say, the parties did not agree to a process for identifying and categorizing attachments and determining whether to withhold or produce them. That lack of agreement, in large part, has led to the current dispute. Regardless, it is clear from the briefing that both parties clearly recognized the potential for instances where non-independently privileged attachments could present a problem in relation to a privileged parent. Voith adopted a three-step process which, from its perspective, accounted for this potential problem. First, at the outset, Voith identified, but did not log, previously produced non-privileged attachments. AMP agreed simply to accept Voith's representation on this issue. (ECF No. 193 at 10; ECF No. 193-7.) Further, Voith produced, but did not log, any remaining non-independently privileged attachments not previously produced to AMP. These attachments were produced without metadata to avoid the potential for disclosure of a privileged communication. Finally, Voith logged any remaining and independently privileged attachments. For its part, AMP adopted a process that yielded four

potential outcomes: the attachment and its parent were both produced as non-privileged; the attachment and its parent were both withheld as privileged; the parent was withheld but the attachment was produced; the parent was produced but the attachment was withheld. (ECF No. 193 at 7.) According to AMP, its logged attachments include non-independently privileged attachments which it has deemed to be privileged in "context," *i.e.*, where the "nature and context of the communication as a whole renders the 'attached version' privileged. (*Id*.) AMP further explains that, in the case of "context" privilege, although the *attachment* was logged and withheld, "the original version of the same relevant document could be found elsewhere in AMP's production." (*Id.*)

Voith contends that AMP's approach, compounded by its deficient logging, has made it difficult to determine whether the attachment is appropriately withheld as either independently privileged or because it has been produced elsewhere. Voith suggests that it would be willing to accept AMP's representation that the "context-privileged" documents have been provided elsewhere but asserts that AMP has not offered such a representation.

The Court offers the following observations. First, contrary to Voith's protestations, AMP has represented, both in its briefing and through Mr. Robertson's Declaration, that it has otherwise produced every document withheld not on the basis of independent privilege but on the basis of what AMP has deemed its "context" driven privilege. *See* ECF No. 193 at 7; Robertson Decl. at ¶ 3. At this point, absent anything but accusations to the contrary, the Court will accept AMP's representations that this is so. Of course, AMP is specifically cautioned that, if this turns out not to be the case, appropriate consequences for any such misrepresentations may need to be considered. What is less clear to the Court, particularly given the nature of the parties' briefing, is the extent to which this resolves Voith's issue with AMP's privilege log as

7

addressed to these attachments. Voith has submitted a 1082-page exhibit setting forth the 12,997 disputed log entries. (ECF No. 190-1.)[3] A cursory review suggests that any description containing the introductory phrase "[a]ttachment providing information in furtherance of legal advice …" would relate to an attachment that is not independently privileged but was deemed by AMP to be privileged in the context of seeking legal advice. Beyond this, the Court will not parse this exhibit line by line. Instead, AMP is **DIRECTED** to confirm in writing within 14 days of the date of this Order which disputed entries in Exhibit 190-1 can be removed based on its representation that these attachments have otherwise been produced. For ease of reference, such written confirmation should take the form of a revised table identical in format to Exhibit 190-1. Accordingly, Voith's motion to compel is **DENIED** without prejudice at this juncture but is subject to renewal as it pertains to any disputed attachment privilege log entries identified in Exhibit 190-1 that may remain after receipt of AMP's written confirmation.

## B. Discharge Ring Production

### 1. Third Party Records

Next, Voith contends that 43 emails AMP withheld from its discharge ring production must be produced with their attachments because they involve third parties. (ECF No. 190-3.) In response, AMP has agreed to produce items 3, 4, and 5 as identified on Voith's exhibit but maintains that the remainder are protected work product. (ECF No. 193 at 18.) The remaining 40 items can be categorized as follows. Thirty-five entries are either emails or attachments to emails (32 emails, 3 attachments) between Pete Crusse, AMP's Vice President of Hydro Construction, and various individuals from Santo Antonio Energia, S.A., a Brazilian

---

[3] As the Court understands it, the 4,711 items separately identified in ECF No. 190-2 would also appear in ECF No. 190-1.

hydroelectric utility. (Items 8-40 and 42-43). (Robertson Decl. at ⁋ 9.) Two items are attachments to emails between Mr. Crusse and another third party. (Items 2 and 7.) Two items are emails between another AMP employee and a third-party. (Items 41 and 44.) Finally, one item is an attachment to an email between AMP employee Scott Barta and a third-party. (Item 6.)

In resolving claims regarding the work product doctrine, the Court applies federal law. *In re Powerhouse Licensing*, 441 F.3d 467, 472 (6th Cir. 2006). This doctrine prevents "unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Accordingly, the work product doctrine "protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Powerhouse Licensing*, 441 F.3d at 438. Federal Rule of Civil Procedure 26(b) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative...." Fed. R. Civ. P. 26(b)(3)(A). There are two considerations when determining whether a document was "prepared in anticipation of litigation or for trial": "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). Accordingly, "[t]he mere fact that a document was prepared by an attorney does not necessarily lead to the characterization of that document as work product." *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 181 (S.D. Ohio 1993). This Court has previously discussed the different approaches taken in determining if a document was prepared in anticipation of litigation or trial. *Id.* at 181–82 (noting that "[s]ome courts hold that the

possibility of litigation must be 'identifiable because of specific claims that [have] already arisen[ ]' " and that other courts consider "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation") (internal citations omitted).

Subject to Rule 26(b)(4) (regarding trial preparation and expert witnesses), work product materials may still be discovered if:

(i)      they are otherwise discoverable under Rule 26(b)(1); and

(ii)     the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A)(i), (ii) (emphasis in original). "Under the Federal Rules, the work product protection under Rule 26(b)(3) is not limited to attorneys, but has been extended to documents and tangible things prepared by or for the party and the party's representative, as long as such documents were prepared in anticipation of litigation." *Decker v. Chubb Ins. Co*, No. 1:15-cv-88, 2015 WL 5954584, *5 (S.D. Oh. Oct. 15, 2015) (citing Fed. R. Civ. P. 26(b)(3)(A)).

As the Rule provides, documents that are protected as work product may still be discoverable if the requesting party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A). While "fact" work product may be discoverable upon such a showing, "opinion" work product is entitled to near absolute protection against disclosure. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). "[A]bsent waiver, a party may not obtain the 'opinion' work product of his adversary; *i.e.*, 'any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal theories.'" *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163-64 (6th Cir. 1986) (citations omitted)).

Under certain circumstances, however, a party may waive a claim under the work-product doctrine. *In re Columbia/HCA Healthcare,* 293 F.3d at 304.  Because the purpose of the work-product doctrine is to protect the relevant work "from falling into the hands of an adversary," disclosure of protected materials to a third-party will often waive the protection of the work-product doctrine. *See In re Chevron Corp.,* 633 F.3d 153, 165 (3rd Cir. 2011). When work product is disclosed to a third party, the key issue becomes whether "the material is disclosed in a manner inconsistent with keeping it from an adversary...." *Id.; cf. also In re Columbia/HCA,* 293 F.3d at 306 ("Other than the fact that the initial waiver must be to an 'adversary,' there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege."); *see also Gard v. Grand River Rubber & Plastics Co.,* No. 1:20CV125, 2021 WL 75655, at *13 (N.D. Ohio Jan. 8, 2021 (disclosure of protected materials to a third-party will often waive the protection of the work product doctrine).

AMP asserts that all of Mr. Crusse's correspondence with Santo Antonio represent investigative and fact finding undertaken at the direction of AMP's counsel and therefore constitute work product.  (Robertson Decl. at ⁋ 10.)    Further, AMP contends that work product protection was not waived as to these communications Santo Antonio is a non-adverse third party.  Finally, AMP argues that Voith has failed to demonstrate that it has a substantial need for these communications or that it cannot obtain these same documents from a third-party.  Voith argues that, with respect to the emails *from* Santo Antonio to Mr. Crusse, even assuming Mr. Crusse was operating at counsel's direction, documents from a third-party to a party's counsel are not work product.  With respect to the emails *to* Santo Antonio from Mr. Crusse, Voith contends that AMP has presented no evidence that they contain the mental impressions of counsel.  Alternatively, Voith argues that AMP waived any work product protection when the

emails were shared with individuals at Santo Antonio.  Finally, Voith contends that if, as AMP

suggests, Voith could have obtained the emails directly from Santo Antonio, AMP could not

have had any expectation that the emails would remain confidential.

The Court believes it would be premature to determine whether work product protection

extends to any of these items without an *in camera* inspection.  Accordingly, AMP is

**DIRECTED** to submit the 40 remaining items identified in ECF No. 190-3 to the Court for an *in

camera* inspection within seven days of the date of this Opinion and Order.

### 2. Attorney-Client Privileged Emails without Attorneys

Voith seeks to compel 38 emails (and their attachments) between non-attorneys for which

it contends that AMP has claimed attorney-client privilege.  (ECF No. 190-4.)   In response,

AMP contends that all of these documents represent protected work product and that many of

them also constitute privileged attorney-client communications.  (ECF No. 193 at 21.)  Voith

asserts that the log descriptions as written establish neither privilege nor protected work product.

The Court's review of these particular log descriptions confirms Voith's characterization that all

of these documents were withheld only on the basis of attorney client privilege.  (*See* ECF No.

190-4 at Column G.)   Further, consistent with Voith's view, several of these entries do not

appear to describe a privileged communication.  (*See, e.g.*, ECF No. 190-4 at entries 2, 15, 17,

19, 24, 25, 26, and 39.)   To the extent that AMP now cites work product protection as its

primary basis for withholding, AMP is **DIRECTED** to re-review these 38 emails and their

attachments and to revise its privilege log to clarify precisely how these emails constitute

protected work product.  AMP is further **DIRECTED** to complete this re-review and

clarification and provide it to Voith within fourteen days of the date of this Order.  If, at that

time, Voith continues to dispute a particular entry it may renew its motion to compel on this

issue.  Accordingly, the motion to compel is **DENIED** without prejudice to renewal upon receipt of AMP's revised privilege log relating to these emails.

### 3. Stantec emails

Voith seeks 114 emails exchanged between AMP and third-party engineer Stantec and withheld from AMP's discharge ring production on the basis of either attorney-client privilege or the work product doctrine or both.   (ECF No. 190-5.)  As Voith argues, the Court previously ordered AMP to produce Stantec emails in its primary document production and nothing is different here.  In response, AMP makes several assertions designed to demonstrate the privileged nature of the AMP-Stantec relationship.  First, AMP recycles its previously rejected argument that Stantec (formerly MWH) is a litigation consultant.  Further, AMP contends that the Joint-Defense Agreement executed by AMP and Stantec on April 13, 2018, "has elements of a joint defense agreement, a joint prosecution agreement, and a litigation consulting agreement." (ECF No. 193 at 23.)   By way of footnote, AMP adds that these emails would also be protected under the common interest doctrine. (*Id.* at 24 n.12.)   AMP also cites Stantec's status as a retained expert witness in this case and the fact that AMP counsel has represented Stantec personnel at depositions. Beyond these arguments, AMP takes aim at Voith's interpretation of the JDA and Voith's own practices of withholding documents relating to communications with Voith's litigation consultant Dr. Hutarew.  AMP's arguments on this issue are not well-taken

First, the Court finds no merit to AMP's continued argument that Stantec is a litigation consultant.   As the Court previously has recognized, Section 3.22.2 of AMP's contract with Stantec contemplated Stantec's potential retention as AMP's litigation consultant.  However, Section 3.22.1 required that AMP request those services in writing from Stantec and that both AMP and Stantec sign a written scope and budget for those services.  The Court already found

evidence of any specific agreement to be non-existent.  (ECF No. 133 at 14.)  AMP now suggests

that the JDA is, *inter alia*, a litigation consulting agreement. The Court, however, is not

persuaded.  As Voith points out, nothing in the JDA engages Stantec to perform additional

services; the JDA contains no reference to Sections 3.22.1 or 3.22.2.8; the scope of any

additional services is not defined; and there is no budget for such services.   Moreover, the JDA

specifically provides that it does not alter the [Stantec] Contracts in any way except to toll notice

requirements.  (ECF No. 193-31, at ¶ 5.c.)  In short, the JDA is not an agreement by which AMP

transformed Stantec's role as project-engineer into a specially-retained litigation consultant.

AMP's reliance on the joint defense or common interest doctrines is likewise to no avail.

AMP does not address these doctrines with particular precision or regard to the governing law.

The Court will begin its analysis with a discussion of the specific nature of these concepts as they

relate to the protections AMP asserts.

As the Court discussed previously:

"In a diversity case, the court applies federal law to resolve work product claims
and state law to resolve attorney-client claims." *In re Powerhouse Licensing, LLC*,
441 F.3d 467, 472 (6th Cir. 2006) (citing, *inter alia*, Fed. R. Evid. 501). In this []
diversity suit, state law governs attorney-client privilege claims, and federal law
governs assertions of work product doctrine protection.  *See* Fed. R. Civ. P.
26(b)(3). "The burden of establishing the existence of the privilege rests with the
person asserting it." *Canton Drop Forge, Inc. v. Travelers Cas. & Sur. Co.*, No.
5:18-CV-01253, 2019 WL 1205295, at *1 (N.D. Ohio Mar. 14, 2019) (citing *U.S.
v. Dakota*, 197 F.3d 821, 826 (6th Cir. 1999)).

(ECF No. 133 at 11.)[4]  There is no material difference between Ohio's attorney-client privilege

and the federal attorney-client privilege. *MA Equip. Leasing I, L.L.C. v. Tilton*, 980 N.E.2d 1072,

---

[4]  As the Court noted in its previous Opinion and Order:

On the issue of attorney-client privilege, the parties do not explicitly address
whether Ohio law or the law of another state governs here. The Court notes that, in
connection with AMP's motion to compel Voith to produce a compliant privilege

1079–80 (Ohio App. 10th Dist. Oct. 9, 2012) (citing *Guy v. United Healthcare Corp.,* 154 F.R.D.

172, 177 n.3 (S.D. Ohio 1993); *Inhalation Plastics, Inc. v. Medex Cardio–Pulmonary, Inc.,* No.

2:07–CV–116, 2012 WL 3731483 (S.D. Ohio Aug. 28, 2012)).[5]

Ohio appears to recognize both a joint-representation exception and common interest

exception to the attorney client privilege. *Squire, Sanders & Dempsey, L.L.P. v. Givaudari*

*Flavors Corp.,* 127 Ohio St.3d 161, 169 (2010). Under Ohio law, an *exception* to the attorney-

client privilege falls into the category of situations in which the privilege does not attach to the

communications in the first instance * * *." *Id*. at 173. The joint-representation exception

applies "when the *same attorney acts for two parties* having a common interest, and each party

communicates with him." *Buckeye Corrugated, Inc. v. Cincinnati Ins. Co.,* 2013 WL 4153540 at

*3 (Ohio App. 9th Dist. August 14, 2013) (quoting *Emley v. Selepchak,* 76 Ohio App. 257, 262

---

log, AMP suggests that, based on the relevant contract language, Ohio law applies. (ECF No. 121, at p.8 n.2.) AMP also recognizes that, given that Voith is headquartered in Pennsylvania, that state's law arguably could apply. (*Id*.) AMP explains, however, that Pennsylvania law on this issue is substantially similar to Ohio's. (*Id*.) It does not appear that Voith addresses the issue of governing law. However, in its motion to compel, Voith relies on *William Powell Co. v. National Indemnity Co.,* 2017 WL 1326504 (S. D. Ohio April 11, 2017), a diversity case applying Ohio law on attorney-client privilege. Accordingly, the Court has applied Ohio law as relevant.

*Am. Mun. Power, Inc. v. Voith Hydro, Inc.,* No. 2:17-CV-708, 2020 WL 5014914, at *7 n.8 (S.D. Ohio Aug. 25, 2020). Similarly, the Court has applied Ohio law as relevant in connection with the current motion to compel.

[5] Federal law, however, can govern waiver in a diversity case, "even if state law provides the rule of decision." *Pinnacle Sur. Servs., Inc. v. Manion Stigger, LLP,* 370 F. Supp. 3d 745, 750–51 (W.D. Ky. 2019) (citing Fed. R. Evid. 502(f); *accord. Lee v. Med. Protective Co.*, 858 F. Supp. 2d 803, 807 (E.D. Ky. 2012). However, federal law does so only when "disclosure" of the privileged communication is made, whether intentional or inadvertent, "in a federal proceeding." Fed. R. Evid. 502(a)–(b), advisory committee's note ("[This] rule does not purport to supplant applicable waiver doctrine generally.").

(9th Dist.1945), quoting 8 Wigmore on Evidence, Section 2312 (3d Ed.1940)). Joint representation is distinguishable from situations where a lawyer represents one client, but another person with allied interests cooperates with the lawyer and client. *M.A. Equip. Leasing,* 980 N.E.2d at 1084 (citation omitted). Further, joint representation does not necessarily exist when clients of the same lawyer share common interests. *Id.* A joint-client representation begins when the co-clients convey their desire for representation and the lawyer consents. *Id.*

Under Ohio law, the common interest exception is "'[a]nother step beyond the joint client situation * * * where two or more clients, each represented by their own lawyers, meet to discuss matters of common interest-commonly called a joint defense agreement or pooled information situation.'" *Buckeye Corrugated,* 2013 WL 4153540, at *3 (quoting *State ex rel. Bardwell v. Ohio Atty. Gen.,* 181 Ohio App.3d 661, 680 (Ohio App. 10th Dist. 2009), quoting McCormick, *Evidence,* Section 91.1, at 413–414 (6th Ed.2006)). To fall within the common interest exception, it must be shown that "(1) the communications were made in the course of a joint defense effort; [and] (2) the statements were designed to further the effort * * *." *Id*. at 3 (quoting *Travelers Cas. and Sur. Co. v. Excess Ins. Co. Ltd.,* 197 F.R.D. 601, 606 (S.D. Ohio. 2000), quoting *In re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.3d 120, 126 (3d Cir. 1986). The common interest exception should be construed narrowly. *Id*. (citing *Cigna Ins. Co. v. Cooper Tires and Rubber, Inc.,* No. 3:99CV7397, 2001 WL 640703, at *2 (N.D. Ohio May 24, 2001)). Therefore, the exception will only apply where the "disclosures are made in the course of formulating a common legal strategy." (Internal quotations and citations omitted.) *Id.* [T]he common interest doctrine "typically arises in the context of litigation when two parties are either represented by the same attorney or are independently represented but have the same goal in the litigation. Under those circumstances, they may freely share otherwise privileged

16

communications without waiving the [attorney-client] privilege." *William Powell Co. v. Nat'l Indem. Co.*, No. 1:14-CV-00807, 2017 WL 1326504, at *24 (S.D. Ohio Apr. 11, 2017), *aff'd sub nom. William Powell Co. v. OneBeacon Ins. Co.,* No. 1:14-CV-807, 2017 WL 3927525 (S.D. Ohio June 21, 2017), and *modified on reconsideration,* No. 1:14-CV-00807, 2017 WL 4315059 (S.D. Ohio Sept. 26, 2017) (quoting *Fresenius Medical Care Holdings, Inc. v. Roxana Lab., Inc.*, No. 2:05-cv-0889, 2007 WL 895059, at *2 (S.D. Ohio Mar. 21, 2007)); *see also Avis Rent A Car System, LLC v. City of Dayton, Ohio,* No. 3:12-cv-399; 3:12-cv-405, 2013 WL 3781784 (S.D. Ohio July 18, 2013) (acknowledging the common interest doctrine as recognized under Ohio law).

Federal law also recognizes the common interest and joint defense doctrines. "Under the common interest doctrine, a 'privileged communication can be exchanged without waiving the privilege, provided that the parties have an identical legal interest with respect to the subject matter of the communication.'" *Elvis Presley Enterprises, Inc. v. City of Memphis, Tennessee*, No. 218CV02718SHMDKV, 2020 WL 4283277, at *2 (W.D. Tenn. Mar. 12, 2020), *aff'd*, No. 2:18-CV-02718, 2020 WL 4015476 (W.D. Tenn. July 16, 2020) (quoting *Ford Motor Co. v. Michigan Consol. Gas Co.*, 2013 WL 5435184, at *5 (E.D. Mich. Sept. 27, 2013) (citations and internal quotations omitted)); *see also Prudential Def. Sols., Inc. v. Graham*, 517 F. Supp. 3d 696, 702 (E.D. Mich. 2021) (explaining that the privilege applies where "two or more clients with a common interest in a matter are represented by separate lawyers and agree to exchange information concerning the matter) (citations omitted). "[L]itigation need not be actual or imminent for communications to be within the common interest doctrine." *Id.* (citing *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 n.6 (7th Cir. 2007))]; *see also Cooey v.*

*Strickland*, 269 F.R.D. 643, 652 (S.D. Ohio 2010) (recognizing that the doctrine applies only to protect communications regarding the common interest and intended to further that interest). "Under the 'joint defense doctrine,' communications between one client (*e.g.*, a defendant) and his attorney are allowed to be shared with a co-defendant without waiving the privilege where both are represented by the same attorney.'" *Id.* (quoting *Polylok, Inc. v. Bear Onsite, LLC*, 2017 WL 1102698, at *7 (W.D. Ky. Mar. 23, 2017); *see also Prudential*, 517 F. Supp. 3d at 703 (the joint-client privilege applies only where "two persons employ a lawyer as their common agent" and "the communications [are] to [the attorney].") (citations omitted). "For either doctrine to apply, the underlying shared communication must be privileged or protected by the work product doctrine." *Id.* (citing Restatement (Third) of the Law Governing Lawyers § 76)); *see also United States ex rel. Scott v. Humana Inc.,* No. 3:18-CV-61-GNS-CHL, 2021 WL 1221487, at *3 (W.D. Ky. Mar. 30, 2021) (discussing that applicability of the common interest doctrine requires attorney-client privilege or work product protection).

Regardless of whether Ohio law or federal law governs, AMP has not demonstrated the applicability of either the joint-defense or common interest doctrines. First, AMP does not explain how the requirements for application of the joint defense doctrine have been met. AMP mentions, without elaboration, that Stantec is an AMP-retained expert witness in this case and AMP's counsel has represented Stantec personnel at depositions. As Voith points out, however, Stantec is not a party defending claims in this matter. Further, although captioned as a JDA, the document does not expressly indicate that AMP and Stantec intend to pursue a particular defense together. (ECF No. 193-31.) AMP cites no evidence to the contrary.

Similarly, AMP has not demonstrated the existence of a common *legal*, not merely commercial, interest. *Elvis Presley Enterprises*, 2020 WL 4283277 at *2; *Buckeye Corrugated*,

2013 WL 4153540, at *3.  As Voith notes, the particular 114 emails at issue here relate to AMP's claim that the discharge rings are defective.  But, as Voith also asserts, Stantec did not design, manufacture or install the Voith discharge rings and no claim related to the discharge rings involves Stantec.  Under this circumstance, it is not possible to conclude that AMP and Stantec share an identical legal interest with respect to this specific subject matter.

Beyond this, to the extent necessary, AMP has not addressed the existence of an independent underlying privilege with respect to any of these 114 documents.  Accordingly, the motion to compel is **GRANTED** as to the 114 emails between AMP and Stantec.

### C.  Remaining non-email log entries

Voith seeks 2316[6] non-email items for which AMP has not identified the author or provided a description which establishes privilege.  (ECF No. 190-6.)  In arguing against production, AMP incorporates its argument above relating to the email attachments.  Beyond this, AMP does not seriously contest Voith's position with respect to these entries in any significant way.  Instead, it both suggests incorrectly that Voith continues to contest 9,842 non-email records and points out Voith's own alleged privilege log deficiencies.

As the Court has already explained to the parties at some length:

> There is no question that simply claiming that information is privileged "is insufficient to meet the burden" of establishing privilege. *Little Hocking Water Assn., Inc. v. E.I. Du Pont De Nemours & Co.*, No. 2:09-CV-1081, 2013 WL 607969, at *5 (S.D. Ohio Feb. 19, 2013), *aff'd sub nom. Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, No. 2:09-CV-1081, 2014 WL 5857994, at *5 (S.D. Ohio Nov. 12, 2014) (quoting *In re Trans–Industries,* No.: 1:10 MC 34, 2011 U.S. Dist. LEXIS 37¶ 0, at *10, 2011 WL 1130410, at *3 (N.D. Ohio Mar. 28, 2011)).

---

[6] Voith originally disputed 9,842 non-email records which AMP had withheld from production. As explained in Voith's Reply, it has culled the disputed privilege log entries to 2,316.   (ECF No. 198 at 18 requesting that AMP be ordered to produce "the 2,316 non-email items for which AMP has not identified the author or provided a description which establishes privilege" and citing ECF No. 190-6.)

Fed. R. Civ. P. 26(b)(5)(A) provides as follows:

> **(A) Information Withheld**. When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

The Rule does not identify the precise information that must be contained in a privilege log. Instead, courts are required to look to case law for guidance.

Courts have found privilege logs deficient where they have included general categories of persons and entities without identifying anyone by name and position, and provided vague descriptions, such as a notation that a document is "correspondence" or "meeting notes" or "a report containing legal information." *Clark Const. Grp., Inc. v. City of Memphis*, 2005 WL 6187896, at *3 (W.D. Tenn. Feb. 9, 2005). Similarly, courts have found deficiencies where logs have "identif[ied] only the dates of the documents, a brief description providing no substantive information, and the asserted privilege." *Mafcote, Inc. v. Fed. Ins. Co.*, 2010 WL 1929900, at *5 (W.D. Ky. May 12, 2010).

In *In re Search Warrant Executed at Law Offices of Stephen Garea*, 173 F.3d 429, 1999 WL 137499, *2 (6th Cir. 1999) (unpublished), the Sixth Circuit noted,

> [i]n our view, a person seeking to assert the attorney-client privilege must make a minimal showing that the communication involved legal matters. This showing is not onerous and may be satisfied by as little as a statement in the privilege log explaining the nature of the legal issue for which advice was sought.

Further, as explained by the Court in *Cooey v. Strickland*, 269 F.R.D. 643 (S.D. Ohio 2010):

> The privilege log must be detailed enough to prove that the communications in question were in fact confidential communications relating to legal advice. *In re Search Warrant Executed at Law Offices of Stephen Garea,* No. 97-4112, 173 F.3d 429, ——, 1999 WL 137499, at *2 (6th Cir. Mar. 5, 1999). The party asserting the privilege must make "at least a minimal showing that

the communication contained legal matters," but that showing need not be "onerous and may be satisfied by as little as a statement in the privilege log explaining the nature of the legal issue for which advice was sought." *Id.* 173 F.3d 429 at ——, at *2. However, merely conclusory statements may not be enough to satisfy this minimal standard. *Id.* 73 F.3d 429 at ——, at *2. A "cryptic privilege log" does not satisfy this standard if "review of the documents themselves fails to reveal whether they were produced or transmitted in the course of legal representation." *Id.* 173 F.3d 429 at ——, at *2. *See also United States v. Constr. Prods. Research, Inc.,* 73 F.3d 464, 473 (2d Cir. 1996) ("if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of the legal requirements for application of the privilege, his claim will be rejected") (quoting *Bowne of New York City, Inc. v. AmBase Corp.,* 150 F.R.D. 465, 471 (S.D.N.Y. 1993)).

*Id.* at 649.

*Am. Mun. Power, Inc. v. Voith Hydro, Inc.,* No. 2:17-CV-708, 2020 WL 5014914, at *10–11

(S.D. Ohio Aug. 25, 2020).

Expanding upon the above discussion, in *Clark*, the court described the requirements for

a privilege log:

"'[E]ach document in a privilege log should contain details including: date, author and all recipients of the document, subject matter, and an explanation as to why the document should be privileged and not produced in discovery.'" *Id.* at *3 (quoting *Coltec Industries, Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 371 (N.D.Ill.2000)).

*Clark,* 2005 WL 6187896, at *3.

Similarly, in *Mafcote*, the court listed the following elements to be identified in a

privilege log:

(a) The author(s) and all recipients (designated so as to be clear who is the sender and who the receiver), along with their capacities/roles/positions.
(b) The document's date.
(c) The purpose and subject matter of the document.
(d) The nature of the privileged asserted, and why the particular document is believed to be privileged.

21

*Mafcote,* 2010 WL 1929900, at *6 (citing *Brubaker v. Encompass Prop. & Cas. Co.,* 2008 U.S. Dist. LEXIS 40133, at *2 (E.D. Mich. May 19, 2008); *Jones v. Hamilton County Sheriff's Dep't,* 2003 WL 21383332 (S.D. Ind. June 12, 2003); *Allen v. Chicago Transit Auth.,* 198 F.R.D. 495, 498 n.1 (N.D. Ill. 2001); *Allendale Mut. Ins. Co. v. Bull Data Sys.,* 145 F.R.D. 84, 88 (N.D. Ill. 1992); *Smith v. Logansport Cmty. Sch. Corp.,* 139 F.R.D. 637, 648–49 (N.D. Ind. 1991)).  The *Mafcote* court found the privilege logs insufficient because they "identif[ied] only the dates of the documents, a brief description providing no substantive information (e.g. "Email correspondence with Mark W. Dobbins and Matt Jean"), and the asserted privilege." *Id.* at *5.

 In applying these applicable standards, the Court will not undertake the onerous task of analyzing in detail all 2,316 entries contained in 119 pages.   (*See* ECF No. 190-6.)  The Court's superficial review, however, indicates that AMP's privilege log as it relates to these non-emails does not satisfy the requirements of Rule 26(b)(5)(A)(ii).  Where AMP has asserted "attorney-client communication" as the type of "privilege," it has failed to identify any sender or any recipient, let alone whether such individual is an attorney. The "description" category also can only reasonably be described as vague.  While the Court is tempted to order the production of these documents, it finds that the better exercise of discretion at this point is to direct AMP to review and revise these privilege log entries and provide its revisions to Voith within 14 days of the date of this Order.  Accordingly, Voith's motion to compel is **DENIED** without prejudice at this juncture subject to renewal as it pertains to any disputed privilege log entries identified in Exhibit 190-6 remaining after receipt of AMP's revisions.

## IV.

 For the reasons stated above, Voith's motion to compel (ECF No. 190) is **GRANTED, in part and DENIED without prejudice, in part,** to the extent set forth herein.  AMP shall

complete its review and revisions of the relevant disputed entries (ECF Nos. 190-1 (which includes 190-2); 190-4; 190-6) and provide a revised privilege log to Voith within 14 days of the date of this Order.  AMP shall produce the Stantec documents to Voith within fourteen days of the date of this Order.  AMP is **DIRECTED** to submit to the Court the 40 remaining items identified in ECF No. 190-3 for an *in camera* inspection within seven days of the date of this Opinion and Order.

　　　　　**IT IS SO ORDERED.**


　　　　　　　　　　　　　　　　　/s/ *Elizabeth A. Preston Deavers*
**DATED:  October 20, 2021**　　　**ELIZABETH A. PRESTON DEAVERS**
　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**