IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMERICAN MUNICIPAL
POWER, INC.

    **Plaintiff,**

    vs.

VOITH HYDRO, INC.,

    **Defendant.**

Case No. 2:17-cv-708

Chief Judge Algenon L. Marbley

Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court in follow-up to the Court's previous Opinion and Order dated October 20, 2021 (ECF No. 205) addressed to Voith's motion to compel ESI production (ECF No. 190), AMP's 31-page response (accompanied by 24 exhibits totaling over 1400 pages) (ECF No. 193), and Voith's reply (ECF No. 198).  The Court directed AMP to submit the 40 remaining items identified in ECF No. 190-3 to the Court for an *in camera* inspection.  AMP submitted the documents as directed and the Court now has completed its *in camera* review.  Accordingly, the Court resolves this remaining issue raised by Voith's motion to compel as follows.

**I.**

To recap briefly, Exhibit 190-3 contains 43 entries reflecting emails or attachments that Voith contends AMP withheld from its discharge ring production and must be required to produce because they involve third parties. (ECF No. 190-3.)  In response, AMP agreed to produce items 3, 4, and 5 as identified on Voith's exhibit but maintains that the remainder are

protected by the attorney work-product privilege. (ECF No. 193 at 18.) Consequently, the remaining 40 items still in dispute at the time of the Court's previous Order were categorized as follows. Thirty-five entries are either emails or attachments to emails (32 emails, 3 attachments) between Pete Crusse, AMP's Vice President of Hydro Construction, and various individuals from Santo Antonio Energia, S.A., a Brazilian hydroelectric utility. (Entries 8-40 and 42-43). (Robertson Decl. at ¶ 9.) Two items are attachments to emails between Mr. Crusse and another third-party. (Entries 2 and 7.) Two items are emails between another AMP employee and a third-party. (Entries 41 and 44.) Finally, one item is an attachment to an email between AMP employee Scott Barta and a third-party. (Entry 6.)

In connection with its *in camera* submission, AMP represents that it has confirmed that the original version of Entries 2 and 6 already have been produced. To be clear then, for purposes of this Opinion and Order, 38 Entries remain at issue including Entries 7, 8-40, and 41-44. To further clarify, as noted above, AMP contends that these Entries are protected work product. The gist of AMP's argument in support of its position that these Entries constitute work product is set forth here verbatim:

> In this case, the vast majority of the 43 emails on Voith's Exhibit C are emails from Pete Crusse to representatives of Santo Antonio Energia S.A. ("Santo Antonio") and corresponding responses. Santo Antonio is a Brazilian hydroelectric utility who, like AMP, has had considerable difficulties with Voith's equipment. Mr. Crusse's correspondence with Santo Antonio represent investigative and fact-finding efforts on behalf of and at the direction of AMP's counsel and were part and parcel of a litigation-related investigative trip by AMP counsel to Santo Antonio as part of AMP counsel's case preparation. (Ex. 1, Robertson Decl. at ¶10). All of Mr. Crusse's communications with Santo Antonio were made at the direction of AMP litigation counsel for the purpose of this litigation and not for ordinary commercial purposes. (*Id*.). Accordingly, Mr. Crusse's communications with Santo Antonio are protected work product. The fact that those communications were with a third party whose interests are not adverse to AMP's, precludes waiver of work product protection. Finally, Voith has not even attempted to argue, let alone demonstrate, that it has a "substantial need" for such communications or that it

> cannot "obtain their substantial equivalent by other means"—for example, by requesting the records from Santo Antonio.
>
> All of the remaining records on Voith's Exhibit C are either attachments that were sent to AMP counsel for legal advice [Entry 7] or similar communications with non-adversarial third parties sent on behalf of AMP counsel [Entries 41 and 44]. (*Id.* at ¶9). With respect to the former—i.e. the privileged attachments—had Voith elected to disclose to the Court either the parent emails immediately preceding these documents on AMP's log or even their Group ID metadata on AMP's revised privilege logs, it would be apparent that these are attachments. (*Id.* at ¶11).

(ECF No. 193 at 19-20.)

## II.

In resolving claims regarding the work product doctrine, the Court applies federal law. *In re Powerhouse Licensing*, 441 F.3d 467, 472 (6th Cir. 2006). This doctrine prevents "unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Accordingly, the work product doctrine "protects an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *In re Powerhouse Licensing*, 441 F.3d at 438. Federal Rule of Civil Procedure 26(b) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative. . . ." Fed. R. Civ. P. 26(b)(3)(A). There are two considerations when determining whether a document was "prepared in anticipation of litigation or for trial": "(1) whether that document was prepared 'because of' a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable." *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009 ) (citing *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006)). Accordingly, "[t]he mere fact that a document was prepared by an attorney does not necessarily lead to the characterization of that document as work product." *Guy v. United Healthcare Corp.*, 154 F.R.D. 172, 181 (S.D. Ohio

3

1993).  This Court has previously discussed the different approaches taken in determining if a document was prepared in anticipation of litigation or trial.  *Id.* at 181–82 (noting that "[s]ome courts hold that the possibility of litigation must be 'identifiable because of specific claims that [have] already arisen[ ]'" and that other courts consider "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation") (internal citations omitted).

Subject to Rule 26(b)(4) (regarding trial preparation and expert witnesses), work product materials may still be discovered if:

  (i)   they are otherwise discoverable under Rule 26(b)(1); and

  (ii)  the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A)(i), (ii) (emphasis in original). "Under the Federal Rules, the work product protection under Rule 26(b)(3) is not limited to attorneys, but has been extended to documents and tangible things prepared by or for the party and the party's representative, as long as such documents were prepared in anticipation of litigation." *Decker*, 2015 WL 5954584, at *5 (citing Fed. R. Civ. P. 26(b)(3)(A)).

As the Rule provides, documents that are protected as work product may still be discoverable if the requesting party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. Fed. R. Civ. P. 26(b)(3)(A).  While "fact" work product may be discoverable upon such a showing, "opinion" work product is entitled to near absolute protection against disclosure. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002). "[A]bsent waiver, a party may not obtain the 'opinion' work product of his adversary; *i.e.*, 'any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or legal

4

theories.'" *Id.* (quoting *In re Antitrust Grand Jury*, 805 F.2d 155, 163-64 (6th Cir. 1986) (citations omitted)).

Under certain circumstances, however, a party may waive a claim under the work-product doctrine. *In re Columbia/HCA Healthcare,* 293 F.3d at 304. Because the purpose of the work-product doctrine is to protect the relevant work "from falling into the hands of an adversary," disclosure of protected materials to a third-party will often waive the protection of the work-product doctrine. *See In re Chevron Corp.,* 633 F.3d 153, 165 (3rd Cir. 2011). When work product is disclosed to a third party, the key issue becomes whether "the material is disclosed in a manner inconsistent with keeping it from an adversary. . . ." *Id.; cf. In re Columbia/HCA,* 293 F.3d at 306 ("Other than the fact that the initial waiver must be to an 'adversary,' there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege."); *see also Gard v. Grand River Rubber & Plastics Co.,* No. 1:20CV125, 2021 WL 75655, at *13 (N.D. Ohio Jan. 8, 2021 (disclosure of protected materials to a third-party will often waive the protection of the work product doctrine).

**III.**

As a threshold matter, the Court finds that the majority of documents identified in Exhibit 190-3 do not constitute attorney work product and should be produced. Entries 8-40 do not contain any attorney work product at all. That is, they contain "no mental impressions, conclusions, opinions or legal theories" concerning the litigation and do not even contain any relevant facts learned during the investigation. Instead, they are "communications dealing with merely administrative, logistical, or scheduling matters" relating to AMP's visit to Santo Antonio. *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 114CV00006WCLSLC, 2018 WL 739870, at *4-5 (N.D. Ind. Feb. 6, 2018) (finding certain emails and portions of others

5

not to be work product as they related only to "scheduling/administrative matters"); *see also Keaton v. Hannum*, No. 1:12-cv-00641-SEB-MJD, 2013 WL 1818993, at *7 (S.D. Ind. Apr. 29, 2013) (holding that a discussion regarding the scheduling and rescheduling of a deposition was not work product); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 621 n.282 (S.D. Fla. July 16, 2013) (declining to afford work-product protection to emails concerning administrative or scheduling matters and noting specifically that, while certain communications occurred because of "anticipated" litigation or trial preparation, that was insufficient to imbue them with the special protection afforded to work-product when they were not the type of "documents and tangible things" envisioned by Fed.R.Civ.P. 26(b)(3)); *Pic Grp. v. LandCoast Insulation, Inc.*, No. 1:09-CV-662KS-MTP, 2010 WL 1741703, at *2 (S.D. Miss. Apr. 28, 2010) (finding that communications relating "merely to logistical matters, such as scheduling meetings or conference calls" were not work product).

As for Entry 7, an email attachment from the law firm Kegler, Brown's marketing department, although AMP now claims that this document is entitled to work product protection, that is not the privilege asserted on the privilege log. Rather, the privilege log description reads: "Attachment consisting of document identified by Pete Crusse and sent to AMO legal counsel Shapiro Lifschitz & Schram for the purpose of legal advice in connection with potential insurance coverage for discharge ring issues." (ECF No. 190-3.) This late assertion of work product protection is a sufficient basis to require AMP's production of this document. *See, e.g.*, *Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 WL 5495514, at *26 (S.D. Ohio Nov. 13, 2012) (concluding that a party could not withhold a communication as work product because no such privilege was asserted on the privilege log; the only privilege claimed on the log was the attorney-client privilege). Even indulging AMP here, however, beyond its broad-based

6

assertion of work product protection, AMP has not otherwise explained in its briefing how a newsletter generated by a law firm with no connection to this litigation is subject to such protection.  Nor is it at all apparent to the Court how this possibly could be so.  At best, a generous reading of AMP's privilege description suggests that this third-party document is not privileged standing alone, but considered by AMP to be privileged in context.   If that is the case, then consistent with AMP's professed practice in connection with its document production as a whole, AMP is required to confirm its independent production of this attachment.  (*See* ECF No. 193 at 7:  "If [privileged in context], the attachment was withheld, while the original version of the same relevant document could be found elsewhere in AMP's production.").  As both AMP and Voith have recognized "'[m]erely attaching something to a privileged document will not, by itself, make the attachment privileged.'" *United States ex rel. Scott v. Humana, Inc.,* No. 3:18-CV-61-GNS-CHL, 2019 WL 7404032, at *3 (W.D. Ky. Sept. 24, 2019) (quoting *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990).  (*See* ECF Nos. 190 at 3; 193 at 5 both citing ECF No. 38:  "If the ESI is privileged, any attachments to the ESI will be produced unless also privileged.").  Accordingly, Entry 7 should be produced.

     AMP also claims that Entries 41 and 44 are work product despite its failure to claim such protection for these Entries on its privilege log.  Again, this is a sufficient basis to require AMP's production of both of these documents.  *Graff,* 2012 WL 5495514, at *26.  Moreover, considering AMP's claim of either work product protection or attorney-client privilege does not lead to a different result.  Entry 41 is identified as an email from Jeffery Trei at LaserDesign to Ronald Woodward at AMP sent on January 17, 2019.  Its privilege description states:  "Email providing information in furtherance of legal advice regarding Smithland runner inspection."  This document is comprised of an email string relating solely to the logistics of a visit to the

Smithland Dam. Accordingly, upon its review, the Court is satisfied that this document, as the bulk of the documents addressed herein, does not meet the definition of work product. *See Valley Forge* 2018 WL 739870, at *4-5. Further, taking AMP's description at face value, nothing in this email string indicates the rendering of legal advice by counsel. Although certain of the emails have counsel copied on them, "[c]opying an attorney on an e-mail is not in itself sufficient to make the communication privileged." *Adkisson v. Jacobs Eng'g Grp., Inc.,* No. 3:13-CV-505-TAV-HBG, 2021 WL 149841, at *5 (E.D. Tenn. Jan. 15, 2021); *see also Jacobs v. Equity Tr. Co.*, 2020 WL 7693996, at *3 (Ohio App. 9th Dist. Dec. 28, 2020) (citing *McCall v. Procter & Gamble Co.*, S.D.Ohio No. 1:17-cv-406, 2019 WL 3997375, *4 (Aug. 22, 2019). ("A communication does not obtain privileged status simply because an attorney is copied.").

Entry 44 is an email from Pam Sullivan at AMP to Greg Haynes at The Energy Authority sent on March 25, 2019. Its privilege description indicates: "Email discussing request for legal advice regarding lost MWhs information gathered by Pete Crusse and sent to AMP counsel for analysis." This email string contains only factual information. Absent any meaningful discussion of this specific Entry, AMP has not met its burden of establishing that the information contained in this email string is encompassed within the work-product doctrine. Work-product protection is limited to documents and tangible things and does not prohibit the discovery of underlying facts. *Hines v. Safeco Ins. Co. of Am.,* No. 318CV00304JRWRSE, 2020 WL 5237525, at *2 (W.D. Ky. Sept. 2, 2020) (citing *Roach v. Hughes*, No. 4:13-CV-00136-JHM, 2015 WL 13548427, at *6 (W.D. Ky. Aug. 4, 2015)); *see also Roa v. Tetrick*, No. 1:13-CV-379, 2014 WL 695961, at *5 (S.D. Ohio Feb. 24, 2014) (citations omitted) ("While the work product doctrine protects both tangible and intangible things and documents, it does not protect the disclosure of underlying facts, regardless of who obtained those facts."); *Fresenius Medical Care*

*Holdings, Inc. v. Roxane Laboratories, Inc.,* No. 2:05–cv–889, 2007 WL 543929, at *3 (S.D.Ohio Feb.16, 2007) (to the extent documents contain strictly factual information, as opposed to legal conclusions or opinions, "that factual information cannot be immunized from discovery simply by incorporating it into a document which is entitled to work-product protection"). Moreover, any claim of attorney-client privilege fails for the same reasons noted with respect to Entry 41. Accordingly, both Entries 41 and 44 should be produced.

This leaves two remaining entries at issue, Entries 42 and 43. These Entries are identical copies of the same document - an email from Vitor Sayegh, an employee of third-party Santo Antonio, to Pete Crusse sent on January 21, 2019. Consistent with AMP's claim of work product protection, the privilege description for these Entries states: "Email from third party with a common interest responding to email prepared during or in anticipation of litigation with Voith at the request of counsel, and provided to counsel." Although a close call, the Court's review of this document reveals that it contains material that can be reasonably construed as reflecting, at a minimum, AMP's attorney's mental impressions, judgments, or legal theories. Moreover, the Court is not persuaded that, under the circumstances surrounding this email exchange, a waiver of work product protection has been demonstrated. Finally, Voith has not demonstrated a substantial need for this information sufficient to overcome the protection. Accordingly, the Court concludes that this document is entitled to work product protection and AMP will not be directed to produce Entries 42 and 43.

## IV.

For the reasons stated above, Voith's motion to compel (ECF No. 190) is **GRANTED, in part,** to the extent that AMP is **DIRECTED** to produce the remaining Entries addressed herein

as contained in ECF No. 190-3 with the exception of Entries 42 and 43. AMP shall produce these documents to Voith within **SEVEN DAYS** of the date of this Opinion and Order.

      **IT IS SO ORDERED.**


**DATED:  December 14, 2021**        /s/ *Elizabeth A. Preston Deavers*
      **ELIZABETH A. PRESTON DEAVERS**
      **UNITED STATES MAGISTRATE JUDGE**