IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMERICAN MUNICIPAL
POWER, INC.

      **Plaintiff,**

    vs.

      Case No. 2:17-cv-708

      Chief Judge Algenon L. Marbley

      Magistrate Judge Elizabeth P. Deavers

**VOITH HYDRO, INC.,**

      **Defendant.**

## OPINION AND ORDER

This matter is before the Court to consider the most recent Motion to Compel filed by Defendant Voith Hydro, Inc. ("Voith"). (ECF No. 232.) Plaintiff American Municipal Power, Inc. ("AMP") filed a Response (ECF No. 236) and Voith filed a Reply (ECF No. 241). For the following reasons, Voith's Motion is **GRANTED, in part and DENIED, in part, without prejudice to refiling.**

**I.**

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). "'It is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id*. (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)). The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). While a plaintiff should "not be denied access to information necessary to

establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Determining the scope of discovery is within the Court's discretion. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.*, No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018)

2

(emphasis in original) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

"[T]he Federal Rules of Civil Procedure instruct district courts to limit discovery where its 'burden or expense . . . outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (quoting former Fed. R. Civ. P. 26(b)(2)(C)(iii)). This Court has previously held that "[t]hese factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting 'their original place in defining the scope of discovery'" because "'[r]estoring proportionality' is the touchstone of revised Rule 26(b)(1)'s scope of discovery provisions." *Siriano*, 2015 WL 8259548, at *5 (citing Fed. R. Civ. P. 26(b)(1)). In analyzing the extent of the burden on the producing party, the Court of Appeals for the Sixth Circuit "has held that limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome,' not merely expensive or time-consuming." *Id.* (citing *Surles*, 474 F.3d at 305) (emphasis in original).

"A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26." *Knight Capital Partners Corp. v. Henkel Ag & Co., KGaA*, 290 F.Supp.3d 681, 685 (E.D. Mich. 2017) (citations omitted). "A person withholding subpoenaed

3

information under a claim that it is privileged ... must: (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A); *see also* Fed. R. Civ. P. 26(b)(5)(A). The burden is on the party asserting the privilege. *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983).

## II.

The issue here is whether third-party and project engineer Stantec Consulting Services, Inc. ("Stantec")[1] should be compelled to produce 549 disputed privilege log items currently being withheld at AMP's direction based on assertions of attorney-client privilege (5) and work product protection (544) arising from Stantec's alleged status as AMP's litigation consultant.[2] Voith explains that these items are emails plus their attachments. (ECF No. 241 at 1.) Beyond this, Voith also seeks an order compelling the production of 753 "Owner/Engineer communications" (emails and their attachments) being withheld on the basis of their alleged irrelevance. (*Id.*) Voith requests that the Court order these latter documents produced with an Attorney Eyes Only designation. AMP has not addressed this second issue. Stantec has not responded to Voith's motion at all. Accordingly, the Court **GRANTS** as unopposed the portion of Voith's motion to compel directed to allegedly irrelevant communications. AMP/Stantec shall produce these items to Voith, designated as **Attorney Eyes Only**, within **FOURTEEN**

---

[1] Stantec is the successor to MWH Americas, Inc. All references to Stantec herein are intended to encompass MWH, as relevant.
[2] As the Court understands it, the documents at issue were the subject of a subpoena issued by Voith to Stantec on February 3, 2020. AMP, however, is the party asserting claims of privilege and work product protection with respect to these documents maintained in Stantec's possession.

**DAYS of the date of this Opinion and Order.** The Court now turns to the 549 disputed privilege log items AMP contends are protected because Stantec is a litigation consultant.

Notably, this is the fourth motion to compel relating, at least in part, to documents exchanged between AMP and Stantec for which the parties have consumed the Court's time. In addition to the current motion and the two discussed as relevant below, Voith filed a motion to compel directed to Stantec. (ECF No. 135 as addressed by ECF No. 174.) Equally as notably, AMP's claim that Stantec is a litigation consultant has twice been rejected by this Court.

Resolution of the parties' current dispute requires a bit of a flowchart analysis. First, the Court must determine whether its previous rulings on the matter of Stantec's alleged status as a litigation consultant control. If that question is answered in the negative, the Court must then consider whether the "Settlement Agreement and Amendment of Engineering Agreements" (for purposes of this Opinion and Order, "The Agreement")[3] entered into between AMP and Stantec does in fact establish Stantec's status as a litigation consultant for any purpose. If that question is answered in the affirmative, then the Court must consider whether the privilege log entries are sufficient to demonstrate the protected nature of the documents. The Court will consider each of these questions, in turn, as necessary.

   A. What is the Impact of the Court's Prior Rulings?

Voith argues that the Court's prior rulings that Stantec is not a litigation consultant, to

---

[3] As the parties acknowledge, The Agreement was submitted to the Court approximately two years ago in connection with AMP's letter briefing. Given its highly confidential nature, neither party submitted it for filing in connection with the current motion. The Court has considered The Agreement *in camera* and for purposes of this Opinion and Order cites only very generally to certain provisions not noted by the parties to be highly confidential. However, in accordance with Sixth Circuit precedent, the Court will order AMP to file a copy of The Agreement on the public record, or move for leave to file it under seal, within seven days of the date of this Opinion and Order.

which AMP did not object, govern the parties current dispute. Relatedly, Voith argues that AMP has waived any argument relying on The Agreement because AMP failed to raise it earlier when Voith was seeking documents from the same time period. Some brief background is in order.

On June 26, 2020, Voith filed a motion to compel seeking 3,497 emails. (ECF No. 120.) In response, AMP asserted that these documents, which AMP now stresses were dated before June 22, 2017, were protected because certain language in the original Engineering Agreements[4] established Stantec as not only the project engineer but a litigation consultant as well. (ECF No. 124; ECF No. 124-1.) The Court rejected this argument, ordered the documents produced, and AMP complied. (ECF No. 133.) Further, on July 9, 2021, Voith moved to compel, in part, the production of 114 emails between AMP and Stantec. (ECF No. 190.) Of those emails, one was dated April 16, 2018 and 113 were dated between September 28, 2018 and January 24, 2020. (ECF No. 190-5.) AMP contended that these items were privileged under the terms of a Joint Defense Agreement ("JDA") entered into between AMP and Stantec. The Court rejected this argument, ordered the documents produced, and AMP complied. (ECF No. 205.)

As previewed above, AMP's current claim to protection arises from The Agreement, a third document, the effective date of which, according to AMP, is April 19, 2018. In AMP's view, the Court's prior rulings are inapplicable because those rulings dealt with specific subsets of documents and agreements separate and apart from the communications and The Agreement currently at issue here. Voith rejects AMP's efforts at creating artificial distinctions between current circumstances and those previously addressed.

---

[4]The Court previously has set forth the lengthy and technical background of this case and, in the interest of brevity, will not do so here. (*See* ECF No. 84.) As relevant to the current motion, AMP and Stantec entered into four separate Engineering Agreements in connection with the four hydroelectric power plants designed and built at existing locks and dams along the Ohio River underlying the parties' claims. (*Id.* at 2.)

This issue does not warrant belaboring.  The Court has not squarely addressed whether The Agreement at issue here establishes Stantec's status as AMP's litigation consultant for any purpose.  Voith's argument to the contrary relies on a broad reframing of previous issues and overreads the Court's previous rulings.  Accordingly, the Court does not view as binding its prior rulings addressed to whether the Engineering Agreements or the JDA established Stantec's role as a litigation consultant for any purpose.

Moreover, the Court is not persuaded that AMP in any way has waived its right to assert that Stantec was retained as a litigation consultant under the terms of The Agreement.  To be sure, AMP's contention that it did not cite The Agreement earlier because The Agreement did not encompass all of the documents Voith sought to compel appears insincere -- accepting AMP's asserted effective date of April 19, 2018, only one of the 114 AMP/Stantec items at issue in the previous motion to compel preceded that date.[5]  Nevertheless, while that circumstance may make AMP's previous decision strategically puzzling, it does not amount to waiver.  Voith presents no authority suggesting otherwise.  Indeed, to the extent Voith cites any authority at all, it supports the well-settled propositions that a party cannot raise a new argument in a motion for reconsideration or re-litigate an issue previously decided to which the party did not object.  As discussed, that is not the situation here.  Accordingly, Voith's motion to compel will not be granted on this basis.

---

[5] *See* ECF No. 190-5, Item 2 (AMPVOITH006_01107847) dated April 16, 2018.

### B.  Does The Agreement Retain Stantec as AMP's Litigation Consultant for any Purpose?[6]

As indicated above, The Agreement is in part a settlement agreement and in part an amendment of the four Engineering Agreements entered into between AMP and Stantec relating to the four hydro projects which form the basis of this litigation.  As the Court previously has recognized, Section 3.22.2 of the Engineering Agreements contemplated Stantec's provision of "Additional Services," including the potential for AMP's retention of Stantec as a litigation consultant.  (*See* ECF No. 124-1.)[7]  In order for Stantec to provide Additional Services, AMP's advance written authorization was required and the parties were to "accept the scope and budget addendum."  (*Id.* at Section 3.22.1.1 and 3.22.1.2).

It is against that backdrop that AMP and Stantec entered into The Agreement.  In AMP's view, The Agreement represents the retention of Stantec as a litigation consultant on a wholesale basis beginning on its effective date of April 19, 2018.  To the contrary, Voith contends that The

---

[6] The Court notes AMP's intentional renaming of the Settlement Agreement and Amendment of Engineering Agreements as a "Settlement and Litigation Consulting Services Agreement." AMP's effort in this regard, purely artless in its expectation of persuasion, is particularly audacious -- even by the standards all too frequently on display over the long course of this litigation.

[7] "**3.22.2 Potential Additional Services.** The Owner may require the Engineer to perform the following Additional Services: …

.8 providing Services in connection with a dispute resolution proceeding or a legal proceeding except where the Engineer is party")."

As an "Additional Service," such an engagement had to be agreed to in a separate writing with its own scope and price to be set for such an extra. § 3.22.1.1 ("The parties will treat each Additional Services assignment as a scope and compensation addendum to this Agreement. Except when there is danger of imminent harm to people or property, or when the Owner otherwise requires in writing, both parties must accept the scope and budget addendum before the Engineer begins providing the associated Additional Services."); § 3.22.1.2 ("Except when there is danger of imminent harm to people or property, the Engineer must obtain the Owners' written authorization before providing any Additional Services…."

Agreement is so lacking in specificity as to amount to no agreement for litigation consultancy services at all. Both parties, however, appear to agree that, if Stantec is found to be a litigation consultant, privileges and protections attached to communications or materials shared may remain intact.

Notably, both AMP and Voith urge their interpretation of The Agreement without any acknowledgment of the applicable law or, even more broadly, the basic principles of contract interpretation required to guide the Court's analysis on the issue. Accordingly, the Court will begin its analysis of The Agreement with a recitation of those relevant principles.

First, "[w]hen jurisdiction is based on diversity of citizenship, as it is here, 'state substantive law is used when interpreting contract provisions.'" *List Indus., Inc. v. Umina*, No. 3:18-CV-199, 2021 WL 2916967, at *7 (S.D. Ohio July 12, 2021) (quoting *Whitt Mach., Inc. v. Essex Ins. Co.*, 377 F. App'x 492, 495-96 (6th Cir. 2010)). Therefore, and in the absence of any argument to the contrary, the Court will apply Ohio law to The Agreement. The relevant principles have been explained as follows:

> Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court. The role of courts in examining contracts is to ascertain the intent of the parties. The intent of the parties is presumed to reside in the language they choose to use in their agreement. Where the terms in a contract are not ambiguous, courts are constrained to apply the plain language of the contract. However, extrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning. Nevertheless, a court is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties in the terms of their written contract.
>
> Contractual language is ambiguous only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations. Courts may not use extrinsic evidence to create an ambiguity; rather, the ambiguity must be patent, *i.e.*, apparent on the face of the contract. In determining whether contractual language is ambiguous, the contract must be construed as a whole, so as to give reasonable effect to every

>provision in the agreement. Common words appearing in the written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument. . . .

Id. at *8 (quoting *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763-64 (6th Cir. 2008) (applying Ohio law) (internal citations and quotation marks omitted) (modifications adopted)). The Court will apply these principles in evaluating The Agreement.[8]

Construing The Agreement as a whole, the Court finds the following. The Agreement is expressly intended, in part, as an Amendment to the Engineering Agreements. Further, it expressly engages Stantec for Additional Services as contemplated by the Engineering Agreements. (Article 4.) These Additional Services are to be provided "in connection with the Voith Litigation," defined as the "currently pending litigation between Owner [AMP] and Voith Hydro, Inc." (Sections 4.2; 1.2.2.) The Additional Services to be provided are not limited to those contemplated in Section 3.22.2.7 of the Engineering Agreements. (Section 4.2) AMP agrees to pay Stantec "on account of [Stantec's] performance of [the] Additional Services including Additional Services performed on account of the Powerhouse Movement Claims" defined as "third-party allegations of uneven or excessive powerhouse movement or differential powerhouse settlement … including those asserted in the … 'Voith Litigation.'" (Sections 4.2; 1.2.2.) There is a defined billing process for Stantec's Additional Services. (Section 4.3.) This process differentiates between payment for Additional Services under Section 3.22.2.7 of the

---

[8] As the Court's discussion reveals, the Court declines to take into account the Declaration of Rachel Gerrick, AMP's Senior Vice President and General Counsel, submitted by AMP to support its interpretation of The Agreement. *See* ECF No. 236-2. As set forth herein, the Court finds The Agreement unambiguous such that extrinsic evidence, to the extent the Declaration would qualify as such, need not be considered. Further, as merely an observation, AMP's submission of the Declaration seemingly contradicts its repeated claim that the terms of The Agreement are clear or well defined. *See* ECF No. 236 at 6-8.

Engineering Agreements and payment for "all other Additional Services provided by [Stantec]…." (Section 4.3.2.)  In short, the Court finds, based on the plain language of The Agreement, that AMP retained Stantec to provide Additional Services in connection with the Powerhouse Movement Claims in the Voith Litigation and that these Additional Services were not strictly limited to only those contemplated by Section 3.22.2.7 of the Engineering Agreements.  Accordingly, Voith's motion will not be granted on the basis that AMP has failed to demonstrate any existence of a litigation consultant relationship with Stantec.

Voith's suggestion, made by way of a footnote, that a later litigation services agreement entered into between AMP and Stantec and addressed to a different topic (calculating economic losses associated with defective discharge rings) is evidence that no prior agreement existed does not require a different result.  Even if the Court would recognize such an argument made in a footnote, it only serves to confirm the Court's reading that The Agreement relates only to the Powerhouse Movement Claims.  (*See* ECF No. 232 at n.7 discussing the "Erpenbeck Letter," ECF No. 232-1.)   Further, Voith's additional suggestion that the Court already has determined that AMP/Stantec communications regarding Powerhouse Movement Claims are not protected is similarly unpersuasive.  To the extent that Voith puts forth such an argument, it again overreads the Court's previous ruling.  Moreover, to the extent that Voith is proposing that AMP's previous production of any documents relating to these specific claims may support a finding of subject matter waiver, that issue is not currently before the Court and will not be addressed in the context of this motion to compel.

11

### C. Is Stantec's Privilege Log Sufficient?

Voith argues that Stantec's privilege log does not provide sufficient detail to identify the subject matter of the withheld records to determine whether, in the first instance, they would even qualify as work product or be protected by the attorney-client privilege, setting aside any issue of potential waiver arising from disclosure to Stantec. The Court agrees. Indeed, the descriptions are so seriously lacking as to warrant no further discussion indulging any contrary perspective.[9] This alone is a sufficient basis upon which to grant Voith's motion to compel, especially given the late stage of discovery and the frequency with which the Court has been required to consider this precise argument. However, the Court finds it to be the better exercise of discretion to afford AMP/Stantec the benefit of the doubt, and to allow AMP/Stantec one opportunity, with the guidance provided herein, to revise the privilege log. Accordingly, Voith's motion to compel **is DENIED, in part, without prejudice to re-filing,** if necessary.

### III.

For the foregoing reasons, Voith's Motion to Compel (ECF No. 232) is **GRANTED, in part, and DENIED, in part, without prejudice to re-filing.** The Motion is **GRANTED** as unopposed as to the 753 communications (and attachments) withheld on the basis of relevance. AMP/Stantec shall produce these items to Voith, designated as **Attorney Eyes Only**, within **FOURTEEN DAYS of the date of this Opinion and Order.**

---

[9] Not that AMP meaningfully provides one here. With disappointing predictability, AMP cites Voith's even more "abysmal" deficiencies while championing its own ability to persevere in response. In addition, AMP suggests, without any supporting authority, that the time period covered by these documents alone creates a presumption of privilege.

Further, AMP/Stantec is **DIRECTED** to provide a compliant and revised privilege log to Voith **WITHIN SEVEN DAYS of the date of this Opinion and Order**. Accordingly, Voith's Motion is **DENIED, without prejudice to re-filing,** as to the 549 challenged privilege log items (and attachments.)  If necessary, Voith may renew its motion to compel within 14 days of its receipt of the revised privilege log. **AMP/Stantec** is **SPECIFICALLY ADVISED** that the continued failure to provide a sufficient privilege log **WILL** result in the granting of any renewed motion filed by Voith.

Finally, AMP is **DIRECTED** either to file a copy of The Agreement on the public record, or move for leave to file it under seal, within **SEVEN DAYS of the date of this Opinion and Order.**

IT IS SO ORDERED.


**DATED:  March 31, 2022**          /s/ *Elizabeth A. Preston Deavers*
        **ELIZABETH A. PRESTON DEAVERS**
        **UNITED STATES MAGISTRATE JUDGE**